If it please the Court, I represent Mr. Ty Fowles. I would ask the Court to reserve two minutes for rebuttal. Mr. Fowles has two primary contentions. One is he contends that the District Court was incorrect when it determined that as a career offender, his maximum sentence was life in prison for two reasons. The District Court should not have used the California State attempted murder statute to determine the maximum sentence. It should have followed the directions of the United States Sentencing Guidelines 2E1.102, which would have directed the Court to the most analogous federal crime, which was also an attempted murder statute. The other reason is that the indictment in this case did not plead, as would have been required in California State court, the necessary facts to support a life sentence as a potential maximum. The second argument is that the Court was incorrect when it determined that he was a career offender in the first place. The significance of these two arguments are that what the District Court determined was that the applicable sentencing guideline total level was a level 34, with an applicable sentencing range of 262 to 327 months. And under, in that range, sentenced Mr. Fowles to 300 months. Had the District Court agreed with either one of the two contentions we've raised before this Court, then the sentencing level would have been a level 31, and the applicable guideline range would have been 188 to 235 months. So had the District Court followed either one of our arguments and sentenced Mr. Fowles to no more than the maximum sentence in the applicable range, he would have received the sentence that was 65 months less than the one that he used. Kagan, would you mind talking first about the crime of violence question, Penal Code Section 69? Why is that not categorically a crime of violence? It's not categorically a crime of violence because to be a crime of violence, it has to be directed towards the person of another. It's the language that's applicable. And doesn't, isn't that what the language of the statute says? No. The language of the statute allows, in the California cases, recognize that a threat against oneself as opposed to the person of another or a threat against property would be two alternative ways of violating that statute under. Where does it say that in the statute, and what are the cases that say that? I'd have to go back and pull those cases out of my opening brief. Well, the statute has to start with that. Does the statute say crime against a person or property? It does not say, as I recall, it does not say person or property. But the cases reflect that, that it does not have to be directed against a person of another. And that's the basis for that argument. And we'll find cases in your opening brief that say that? Yes, ma'am. Then what about the non-categorical approach? What is it about what happened here that could have been not violence against the person of another? The non-categorical approach, if you look at the State court record of what was done in that State court proceeding, and this is why I quoted the section from the dissent from Justice Eiffel, I believe, in a different Ninth Circuit case. What happened is that the prosecutor was asked, first of all, there's nothing in the allegations to which of the charges that the defendant pled guilty to that on their face would have established assault against the person of another, which is why we get out of the categorical approach. So what we're left with is what takes place at the sentencing proceeding. But he was charged initially with inflicting injury upon one of the correctional officers. And that was dismissed. Well, the great bodily injury was dismissed, but is it your position that we then read out of the charging document the injury, that somebody was injured? It doesn't matter whether it was a great injury or not, just that there was an injury, which connotes the use of force. And my response to that is, is that injury was obviously disputed because the great bodily injury allegation was dismissed, and in the factual allegations. But the question is, that's severity of the injury. I guess the question I'm asking you is, is it your position that we have to exclude any consideration of the fact that there was an injury without regard to how severe it was when we're trying to decide whether this is a crime against a person versus a threat against property? I think so. In this case, both of the parties have agreed that under the question the courts posited, then the categorical approach would work. But all the parties in this case, and I don't know, I'm still with you on the modified categorical approach. Your position is that by virtue of the fact that the DA dropped the great bodily injury, which I assume is an enhancement that aggravates the punishment, that we cannot consider the fact that there was personal injury involved in the commission of the crime. Well, I think the court's question was dealt with the allegations. And what I'm saying is, you could consider that if you looked at the facts of the case that were admitted by the defendant, let's say, during the course of the plea colloquy, and those facts established the injury. But that's not what happened in this case. Now, wait a minute. Wait, wait. Let's look at the facts of the case. Assume the officer was injured. Does that establish that he used force against the officer? What were the facts that he pled to? I'll tell you what they were. He, quote, he refused to cooperate with verbal commands and forcibly resisted the officers in pulling him off the area he was trying to jump from.  Now, what it says is that the officer tried to pull him off something where he was trying to jump, and in trying to pull him off, the officer was injured. Does that establish that he used force against the officer? I don't think it does. I wouldn't think so. All right. I wouldn't think he would. Well, what's significant, and what's significant about that colloquy is the fact that he was going to jump off of the tier and hurt himself is one of the ways under which you could violate Penal Code section 69. But why can't we conclude? I'm looking at the plea colloquy in which the Court basically recites count one to him, which includes that you did knowingly resist by use of force or violence the executive officer in the performance of their duty, and the defendant says guilty. So why can't we conclude under the modified categorical approach that that is a sufficient admission to show that this was a crime involving force or violence and not threats against property? Because the defendant did not admit facts to support the approach that the Court's taking, which is that, in fact, there was force used against the person of the officer. But he's pleading guilty to that. Why do we need to go any further under the modified categorical approach? All we need to do is satisfy ourselves that this is not a situation where he was convicted under section 69 on a threats theory. And by virtue of the fact that he pled guilty to resisting by use of force or violence, doesn't that end the inquiry under the modified categorical approach? But it's the use of force or violence against the person of another that is the distinction. The fact that he was using force or violence against himself would meet everything that the Court just enunciated, but would not qualify in this case for a predicate effect. Well, I probably should have read the whole thing. But, I mean, in the course of reading the charge, the Court recites specifically that you, Ty Aaron Foles, did willfully and unlawfully attempt by means of force or violence to deter or prevent Lieutenant Cheney, Correctional Officer Bell, Correctional Officer Brown, and then the language I quoted to you, by resisting by use of force or violence. And he pleads guilty to that. And it's the use of force or violence against the person of another. The distinction I'm seeking to draw is person of another versus against himself. But the Court listed four correctional officers, and I think fairly read, I can infer from the charge that the force or violence was directed to those four correctional officers, not against himself. But I don't believe that the language says that specifically, and I don't believe that there are any facts that were actually admitted by the defendant in the plea colloquy to support the theory that, of course, he did. Your theory is that he was resisting the officers by threatening to hurt himself? That's why he was going to jump off the tier. I mean, it's exactly that part of the basis. Jumping off the tier to hurt yourself as a means of resisting the officer violates Penal Code section 69. It's a sufficient factual basis to support the plea of guilty in the State court case, but it does not qualify to make a predicate offense for a career offender basis. Kennedy. Well, what I read to you before, I should have read you the next line, which is the Court, thank you, counsel, do you stipulate that this is the factual basis for the entry of the plea? So we know what the facts are for the plea. It said he refused to cooperate and forcibly resisted the officers in pulling him off the area he was trying to jump from. And in that process, the officer was injured. That's the factual basis of the plea. And that's what the Court accepted as a factual basis. So that's what we have to deal with. And that was the lawyer's comment, not the defendant's comment. Whoever's comment it is, your position is that does not make out the case for using force against some others, willfully using force against others. That's correct, Your Honor. Okay. I see that my time is up. Good morning, and may it please the Court. Assistant United States Attorney Kevin Lally on behalf of the United States. The district court sentenced defendant Ty Fowles to 25 years in prison, 17 years of which was to run consecutive to an eight-year term that the defendant was already serving in state court. The government respectfully submits that that sentence was issued in accordance with applicable law and should be affirmed. Turning to defense counsel's initial challenge to that sentence, the fact that he wasn't a career offender. Well, the defendant concedes that he meets every requirement for being a career offender, but for the fact that he claims that his 19-9 conviction for resisting an executive officer in the performance of his duties, defendant claims that that did not qualify as a crime of violence and therefore couldn't serve as a predicate under the career offender provisions in 4B1.1. And on that, the defendant is simply wrong. The section at issue, California Penal Code 69, can be satisfied in two different ways, and I'm going to go in the reverse order that they're set forth in the statute. Are you going to use the statutory language? Can you tell us what the statutory language is on your points? Yes, Your Honor, and I can do it from memory or I can quote specifically. Memory is fine. Okay. In terms of memory, the one way in which it can be done is to knowingly resist through force or violence an executive officer in the performance of their duties. Any way you skin that cat, any way you look under it, you know, with any kind of magnifying glass, that fits the categorical approach for a crime of violence. The other way in which it can be satisfied is through making a threat or through a threat or force that prevents or dissuades an executive officer from the performance of their duties. Now, that's the one that in an extreme minority of the instances could conceivably be directed towards property. Based on what case? You conceded this point, but I'm kind of wondering why. We have. There is a case called Manual G, and it's cited for sure in the government's defense. I believe it is cited as well in the defense. Would Your Honor like to cite? And you think, I know the case, and you think that says that the statute could be satisfied by a threat against property? Well, in that instance, the threat was against both an individual and property. And the Court didn't make a distinction one way or the other. And so in terms of the most expansive reading, on that basis, we were, the government was conceding that, yes, it could, as the Court didn't say that the threats against the officer's family directly constituted, and the threats against his vehicle didn't constitute a suitable threat. Mr. Lally, can you help me? The Supreme Court recently decided Duenas-Alvarez, I think is the name of the case. Duenas, I think, is correct. Involving 10-851 of the vehicle code. And there's language in there that says that counsel has to be able to point to actual cases as opposed to hypothetical violations of the statute. And I'm wondering, is there any statute that adopts Mr. or any case that adopts Mr. Treeman's theory that where a defendant essentially says, I'm going to kill myself if you don't back off, that that constitutes a violation of Section 69? The government is aware of no such cases. And under Duenas, is it your position that he'd have to be able to cite the cases to show that that's a plausible theory of liability under the statute? That's under my understanding, although I have to concede that I did not review that case prior to coming in today. But my understanding is that that would be correct. So we'll leave that one for another day. In this particular case, though, it doesn't matter, because when you look at the facts under the modified categorical approach, the defendant was convicted of violating that portion of the statute that goes – that was the first one I discussed, the knowingly resisting the executive officer in the course of their duty through force and violence, the one that is in every instance would satisfy a crime of violence under the categorical approach. All right. Let me ask you about that. In addition to the quote I read you, a more complete quote from the DA, is the inmate was disruptive. He was refusing to follow orders. As I remember, he banged his head on some doors and then threatened to jump off the railing and had to be actually physically restrained. He refused to so cooperate with the verbal commands and forcibly resisted the officers in pulling him off the area he was trying to jump from. In that process, that is where the officer was injured. Now, are you familiar with Fernandez, Ruiz, and Leocal? Fernandez, Ruiz, Leocal, I can't profess. Okay. Well, Fernandez, Ruiz followed Leocal and says the teachings of Leocal. We agree with our sister circuits that the reasoning of Leocal, which merely holds  to crime involving the reckless use of force. Now, Leocal says it has to be violent, active crimes. Now, how do you get from a violent, active crime to resisting while they're trying to pull you off? But, Your Honor, you have to look at the context in which this is occurring. This is a prison setting in which the defendant is on a railing, you know, for which he can then fall off, and he's refusing to comply. And so the corrections officers who are responding, you know, initially asked him to reply. He was being disrupted, refused to do so, and then were in a situation where they went to grab him down, and he did not just voluntarily jump down then at that point. He fought back, and that was what resulted. Well, there's nothing that says he struck anybody or anything like that. He resisted, they said. He forcibly resisted, which puts you in the situation of reckless force, of putting those corrections officers. Reckless force. Right. Okay. And Fernandez, Ruiz, says reckless force is not covered. I'm sorry, Your Honor. You're right. No, I'm sorry. I missed the book on that. That's the question. Is this reckless force? If so, it's not a violent crime under our law. No, it is not. Because the whole thing. Or is it a violent act of crime when you're resisting? Every ñ when you are resisting, the sheer act of resisting the officer by physical resistance,  I would say if an officer tries to arrest you and you slug him, you hit him over the head with a club, that probably would qualify as a violent act of crime. If you resist when he's trying to pull you off something, you just resist it, and somebody gets injured because you're pulling back, that may not be a violent act of crime. If you slug the officer, you're not going to be charged under this code. Well, I don't know what you're going to be charged under, but ñ well, what? You mean ñ when do you charge someone for resisting an officer under this section? When you don't use active force against him? No, you might be charged with this and others, but the fact ñ If you slug him, you're going to be charged under something else. You'll probably be charged with various levels of assault and resisting. If it's that type of resistance where you actually hit the officer, you're going to be charged under a different section. You could be charged under multiple sections. But you just told us that if you do that kind of active violent resistance, you'll be charged under a different section. Along with. As well. As well. But that doesn't mean that it's a lesser ñ it doesn't mean that it's a lesser use of force. It's force or violence. And in this instance, by physically resisting a law enforcement officer in their due course of their duties and doing so in such a way in which one was injured, that that was a suitable use of force. Well, there's no ñ use of force is not the end of the answer to the question. If it's a reckless use of force under Leo Kell and Fernandez-Ruiz, then it's not covered by acts of violence. And because I did misspeak, I would like to go back and address that. There's nothing ñ That was only one example, as opposed to a violent act of crime, as Leo Kell puts it. But ñ but ñ All those things involve use of force. We're distinguishing between uses of force which are covered. And in Leo Kell, the Supreme Court talks at length about what type of use of force is a violent crime. There is nothing that is reckless about climbing up ñ knowingly climbing up onto a ñ onto a tier wall in a hostile situation in which law enforcement are already engaged with another individual to refuse to honor their request for compliance and to actively take them on when they come ñ when they come and are forced to rip you off that wall. There is nothing ñ We don't know what ñ what he did by actively take them on. All we know is that he resisted. And all we know is that someone was injured. We know that he forcibly resisted. Yes. But what does that mean? Your Honor, I ñ We have to know whether it's act of violence and forcibly resisting. What does it mean? Does that mean that the ñ Well, but the follow-up sentence is in the course of ñ and I'm not quoting directly, but in the course of which an officer was, you know, sustained injury. And so that is an act of ñ act of violence. Okay. Thank you. Your Honor. Thanks a lot. Two points. The first one, Your Honor, in response to the Court's comment about cases, questions about cases in the opening brief, the exact language of the statute is cited at the top of page 18. If the Court would permit me, I would just like to make one policy comment with regard to the argument on the other issue we proposed, which has to do with whether you look to the most analogous Federal statute or whether you go to the State court statute. And the policy comment is this. If you follow that policy, then what that means is that you're not going to be sentencing identically ñ identical defendants for the crime and their criminal history. You will be sentencing them on the basis of underlying maximums in different State court systems. Didn't Congress make that choice under RICO when it adopted as predicate acts various State law crimes and then directed that the punishment for the RICO violation would be driven by the State legislature's statutory penalties for those offenses? I don't ñ I think that what Congress did in terms of the application of sentencing guidelines in no. 2 to 2E1.1 is exactly the opposite. Well, the problem is that we've got a conflict, do we not? If we adopt your theory, there's an inconsistency between the enabling statute for the sentencing guidelines and the punishment provisions under 1961 or 62, whatever the section is in Title 18 for RICO. And Congress was very specific in RICO that we are to look to State law to determine both predicate crimes and punishment. So why isn't that either an exception to the more general provision in the sentencing guidelines? Because the sentencing guidelines specifically direct the sentencing court differently. And if you ñ So we sort of pick the statute that we favor versus the specific? We take the general over the specific? Is that what you're arguing? What I'm saying is that as a matter of policy, you pick the approach that is the most consistent regardless of the individual facts in the case. And that would be to follow the guidelines because that's pegged to Federal statutes regardless of the State in which the underlying predicate act takes place. Thank you. Thank you, counsel. Thank you both very much. The next case for argument is Irving v. Hall.
judges: Reinhardt, Tallman, Wilken